AO 91 (Rev. 11/82)          **CRIMINAL COMPLAINT**

COPY

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|

| | DOCKET NO. |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>JOHN STEVEN VO, CHRISTOPHER HOANG DO,<br>DAT THE PHAM, VU TIEN NGUYEN | MAGISTRATE'S CASE NO.<br>**SA 15-481M** |

SEP 16 2015

Complaint for violations of Title 18, United States Code, Section 1029(b)(2)

| NAME OF MAGISTRATE JUDGE<br>HONORABLE KAREN E. SCOTT | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Santa Ana, California |
|---|---|---|

| DATES OF OFFENSES<br>Date unknown to September 15, 2015 | PLACE OF OFFENSES<br>Orange County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[18 U.S.C. § 1029(b)(2): Conspiracy to Commit Access Device Fraud]

Beginning on a date unknown, and continuing through on or about September 15, 2015, in Orange County, within the Central District of California, and elsewhere, defendants JOHN STEVEN VO, CHRISTOPHER HOANG DO, DAT THE PHAM, and VU TIEN NGUYEN, conspired and agreed to commit an offense against the United States, namely, to knowingly and with intent to defraud, effect transactions, with one or more access devices issued to another person, to receive payment and things of value during a one-year period, the aggregate value of which is equal to or greater than $1,000, in violation of Title 18, United States Code, Section 1029(a)(5).

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

   (See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>**MATTHEW O'DONNELL**  /s/ |
|---|---|
| | OFFICIAL TITLE<br>Special Agent – United States Secret Service |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[1]<br>**KAREN E. SCOTT** | DATE<br>September 16, 2015 |
|---|---|

[1] See Federal Rules of Criminal Procedure 3 and 54

AUSA S. Tenley x2829          REC: Detention [Warrant]

## AFFIDAVIT

I, Matthew O'Donnell, being duly sworn, declare and state as follows:

### I.   INTRODUCTION

1.   I am a Special Agent ("SA") with the United States Secret Service ("USSS"), and have been so employed since November 2007.  I completed a ten-week Criminal Investigation Training Program at the Federal Law Enforcement Training Center, Glynco, Georgia, as well as an additional seventeen-week training program at the USSS training center.  As a Special Agent, my duties are to investigate violations of federal law, including access device fraud, bank fraud, wire fraud, counterfeit United States currency, and identity theft.  In preparing this affidavit, I have consulted with other law enforcement officers and agents with many years of combined experience in the field of financial crime investigations.  In addition, I have received both formal and informal training from the USSS and other institutions regarding computer-related investigations and computer technology.

### II. PURPOSE OF AFFIDAVIT

1.   This affidavit is made in support of a criminal complaint and arrest warrants charging JOHN STEVEN VO, CHRISTOPHER HOANG DO, DAT THE PHAM, and VU TIEN NGUYEN with conspiracy to commit access device fraud, in violation of Title 18, United States Code, Section 1029(b)(2).

1

2.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrants and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III.  SUBJECTS OF THE COMPLAINT

3.    The individuals against whom I seek a criminal complaint and arrest warrants are JOHN STEVEN VO, CHRISTOPHER HOANG DO, DAT THE PHAM, and VU TIEN NGUYEN.  Defendants VO and DO are currently in custody, while defendants PHAM and NGUYEN are at large.

### IV. STATEMENT OF PROBABLE CAUSE

**A.    Identification of Fraudulent American Express Credit Card Purchases at Vons Grocery Stores**

4.    On September 1, 2015, USSS SA William Elliott and I met with Allen Bolton, a manager at American Express ("AmEx") Global Security, and learned the following:

a.    On or around August 26, 2015, Bolton discovered what he believed to be an ongoing scheme to make fraudulent charges to AmEx credit cards occurring primarily at two Vons grocery stores in Orange County, California.  The two Vons locations at issue are store number 2332, located at 24270 El

2

Toro, Laguna Woods, California, and store number 2508, located at 27320 Alicia Parkway, Laguna Niguel, California (collectively the "Vons stores"). Bolton hypothesized that the fraudulent charges were likely made using AmEx cards that had been intercepted from the mail stream, which had been shipped to AmEx customers as re-issued cards or replacement cards.

b.    Bolton detected the fraudulent activity after discovering a large increase in AmEx activity at the Vons stores, with purchases typically in the range of $4,000 to $6,000 per transaction. Bolton further observed that these same types of purchases were occurring with greater frequency over time. Bolton explained that, in his experience, AmEx customers do not typically make charges in that amount at merchants like Vons, and that those types of charges are typically associated with purchases of gift cards.

c.    Bolton identified approximately $850,000 in charges at the Vons stores between August 1, 2015 and August 25, 2015 that were similar to the charges described above. He also observed that these types of transactions were occurring nearly daily.

d.    Bolton later traced the pattern of activity back to June 2015. In total, Bolton identified approximately $1.3 million in suspicious charges at the Vons stores since June 2015. Of the $1.3 million in charges, $400,000 were approved, and $900,000 were declined by AmEx.

e.    As of September 11, 2015, of the $400,000 in approved transactions, approximately $289,000 had been reported

3

as fraudulent by forty-three different account holders.  As
Bolton explained, more fraud may be reported once account
holders review their monthly statements.  Moreover, some of the
cards on which fraudulent charges were made were re-issued cards
that included a new microchip feature and were sent
automatically to cardholders, and thus cardholders had not
ordered them and were not expecting them.  In other words,
certain cardholders may not have determined that their cards had
been intercepted in the mail because they had not personally
requested them.

      f.   After detecting the fraudulent activity, Bolton
contacted Lisa Sheffer, a Vons Asset Protection Data Analyst.
Sheffer provided Bolton with surveillance photographs associated
with several of the potentially fraudulent transactions
occurring between August 27, 2015 and August 31, 2015 at the
Vons stores.  From Bolton's review of the surveillance
photographs, he saw three different Asian males making purchases
of gift cards at the Vons stores.  Bolton said that, during this
four-day period, he observed those suspects complete six
transactions for nearly $30,000, with nearly $65,000 in declined
transactions during that same period.

    5.   Bolton provided me with the photographs of the
suspects and other records related to the transactions.

    6.   Bolton also told me that in the surveillance images he
had reviewed, he observed the suspects often carrying or using
their cellular telephones while inside the Vons stores.  I
reviewed several of the surveillance images Bolton provided and

could see what appeared to be cellular phones being used by two of the three suspects while inside the Vons stores.

      a.   From my training and experience I know that those committing fraud or other crimes often times utilize cellular phones to communicate with co-conspirators who are often times operating as lookouts, transportation, or security during the commission of crimes inside retail establishments.

**B.   September 1, 2015: Surveillance of the Vons Stores**

      7.   On September 1, 2015, beginning at approximately 9:00 p.m., I, along with other USSS agents and Orange County Sheriff's Department ("OCSD") deputies, conducted surveillance of the Vons stores in attempt to identity suspects engaging in the fraudulent credit card transactions.  Based on my participation in the surveillance operation, and my conversations with other law enforcement officers involved in the surveillance, I learned the following:

      a.   At approximately 12:04 a.m. on September 2, 2015, a gray four-door BMW sedan, bearing California license plate 7JPA286,[1] arrived at the Vons location in Laguna Niguel.  An Asian male -- who law enforcement determined matched the general description of one of the suspects from the surveillance photographs of earlier suspicious transactions provided by Bolton, and who has since been identified as JOHN STEVEN VO -- entered the Vons and attempted to purchase ten gift cards using

---

[1] A search of DMV records determined that the BMW is registered to Hang Thuy Bui at 9051 Oasis Avenue, Westminster, California.  As discussed below, NGUYEN is also associated with the Oasis Avenue address.

AmEx cards ending in -2008 and -1027, for a total transaction price of $6,577.[2]

      b.   A Vons employee ("Employee A") who assisted VO stated that, in connection with the transaction, the suspect had provided a California driver's license of a victim with the initials P.C.N. (CDL XXXX0928).  Employee A further stated that one of the AmEx cards used for the transaction had two names embossed on the card, one of which was P.C.N.'s.[3]

      i.   Subsequent investigation of P.C.N. determined that P.C.N. had previously filed a report with the OCSD alleging that his identity had been stolen.

      ii.   When a DMV photograph of P.C.N. was shown to Employee A, Employee A stated that P.C.N. was not the individual who had conducted the transaction and presented P.C.N.'s driver's license.  Based on my training and experience, I know that individuals engaged in access device fraud will create counterfeit identification cards using a victim's biographical information but containing a photograph of the fraudster.  By doing so, as in this case, the fraudster is able to present an identification document that matches his likeness, but is not issued in his true name.

---

[2] I subsequently contacted the account holder for the card ending in -2008, who confirmed that the attempted transaction was unauthorized.

[3] Bolton later informed me that AmEx cards typically do not have two individuals' names embossed on the card.  Bolton believed that the suspects were likely embossing a second name on the card to match false identification documents in the suspects' possession.

c.    Law enforcement officers then observed VO returning to the BMW, which was driven by a second person.

d.    After the BMW left the Vons parking lot at approximately 12:49 a.m., law enforcement officers followed it to a residence on West Highland Street in Westminster, California (the "Highland Residence").  The BMW made no stops between the Vons and the Highland Residence.  The BMW parked in the driveway of the Highland Residence and remained parked there from approximately 1:29 a.m. until at least 2:40 a.m., at which time surveillance was terminated.  Aerial surveillance at the time of the BMW's arrival at the Highland Residence observed four individuals outside the residence at the time of the BMW's arrival.  VO and the driver of the BMW, along with three of the four individuals outside the Highland Residence, entered the Highland Residence and remained inside for the duration of aerial surveillance.

e.    Law enforcement officers further determined that two other vehicles parked at the Highland Residence were registered to the same 9051 Oasis Avenue, Westminster, California address as the BMW.

C.    **September 3, 2015: Additional Fraudulent Transactions**

8.    During a conversation with SA Elliot on September 3, 2015, I learned the following:

a.    On September 3, 2015, SA Elliot received an email from Employee A that VO had returned at approximately 12:30 a.m. that morning, and successfully purchased $10,000 in Visa gift cards using an AmEx card.

b.    Prior to the successful transaction, VO had attempted a transaction using a different AmEx card, which was declined.  Additionally, between approximately 12:04 a.m. and 12:08 a.m., an individual who Employee A described as an "associate" of VO (later identified as DAT THE PHAM) had attempted a similar transaction using an AmEx card but it was declined.

i.    On or around September 14, 2011, I asked Employee A why he had described PHAM as an "associate" of VO. Employee A told me that several weeks prior, VO had entered the Vons with the individual later identified as PHAM and a second unidentified male.  Employee A recalled that during the transaction, VO joked that he was training PHAM and the second male.

c.    Employee A described PHAM as an Asian male with extensive tattoos, including tattoos above his hairline.  During the transaction, PHAM had provided his California driver's license, which had been logged by Vons personnel.  The driver's license was in PHAM's name, born May 8, 1974, with an address of 13751 Cherry Street, Apt. 5, Westminster, California 92683.

**D.    September 4, 2015: Surveillance of the Highland Residence**

9.    Based on my September 4, 2015 conversation with OCSD Deputy David Wise, I learned the following:

a.    On September 4, 2015, at approximately 6:30 a.m., Deputy Wise observed three individuals at the Highland

Residence.  One of those individuals matched the description of VO provided by the surveillance team.

       b.   Of the ten vehicles parked at the Highland Residence, one of the vehicles, a 2001 Lexus, was registered to VO, at an address in Garden Grove, California.

    E.   Identification of VO, PHAM, and NGUYEN

      1.   JOHN STEVEN VO

   10.   Based on my conversations with Deputy Wise on or around September 4, 2015, I learned the following:

       a.   On September 4, 2015, Deputy Wise met with Employee A to show Employee A a photographic lineup of potential suspects.  Deputy Wise provided the standard OCSD photographic lineup admonishment to Employee A before showing Employee A the lineup, and Employee A indicated he understood.

       b.   Employee A identified VO as the individual who had attempted to purchase ten gift cards on September 2, 2015.  Employee A stated that he had assisted VO with approximately 30 similar transactions over the past five months and was sure VO was involved in the September 2, 2015 transaction.  On September 16, 2015, I learned that Employee A also selected PHAM's photograph as involved in the fraudulent transactions.

      2.   DAT THE PHAM

   11.   Deputy Wise further informed me that he had obtained California DMV records for PHAM (who had earlier presented a driver's license during a fraudulent transaction), and confirmed that PHAM's driver's license photograph was consistent with Employee A's description of PHAM's tattoos.

3.   VU TIEN NGUYEN

12.   On or around September 4, 2015, Deputy Wise informed
me of the following:

a.   Given that several vehicles parked at the
Highland Residence shared an Oasis Avenue address in
Westminster, Deputy Wise searched law enforcement databases for
other individuals associated with that address.

b.   Deputy Wise discovered that VU TIEN NGUYEN had
previously listed the Oasis Avenue address as his place of
residence during a previous arrest.  When Deputy Wise retrieved
NGUYEN's DMV photograph, he immediately recognized NGUYEN as one
of the three individuals depicted in the surveillance
photographs provided by Bolton and Sheffer.

c.   Additionally, at 7:19 p.m. on September 4, 2015
(several hours after Deputy Wise had met with Employee A as
described in paragraph 10(a)), Employee A contacted Deputy Wise
and stated that VO was currently at the Vons.  Deputy Wise was
in the vicinity of the Vons, and arrived at the Vons before VO
departed.

d.   Deputy Wise observed an individual matching the
general description of VO with a Vons employee at a cash
register.  He later learned that this individual completed two
gift card purchases using two different AmEx cards totaling
$5,059.50 each.[4]

---

[4] Bolton later confirmed to Deputy Wise that both
transactions were unauthorized.

e.    Deputy Wise followed VO from the store and observed him entering the passenger side of the same BMW observed on September 2, 2015, and at the Highland Residence. Deputy Wise was able to see the driver of the BMW and immediately recognized him as NGUYEN.

**F.    Additional Fraudulent Transaction by VO, PHAM, and NGUYEN**

13.    I reviewed records related to additional fraudulent transactions at the Vons stores provided by Bolton and the corresponding surveillance photographs provided by Sheffer, and learned the following:

a.    On August 26, 2015 at approximately 11:18 p.m., nine MasterCard gift cards valued at $500 each were purchased at the Vons store, for a total transaction price of $4,553.55.  The gift cards were purchased using an AmEx in the name of a female victim with initials K.K.K., with account number ending in -11012.  AmEx confirmed that the charges were not authorized by K.K.K.  I also reviewed still images from a surveillance camera positioned over the register, and at the exit of the store. Based on my knowledge of the investigation, the individual who completed the transaction appears to be PHAM.

b.    Less than twenty minutes later, on August 26, 2015 at 11:31 p.m., a customer attempted to purchase ten gift cards valued at $500 each, plus several grocery items, for a total of $5,072.46, using an AmEx account of a female victim with initial M.R.B., with an account number ending in -89026. The charge was declined by AmEx.  Shortly thereafter, the same

transaction was attempted but with only six $500 gift cards for a total of $3,035.70.  The charge was again declined by AmEx. The customer then purchased the grocery items using a debit card.  I reviewed still images from a surveillance camera positioned over the register, and at the exit of the store. Based on my knowledge of the investigation, I recognize the individual who attempted these fraudulent AmEx transactions as NGUYEN.

     c.    On August 30, 2015 at approximately 11:01 p.m., ten gift cards valued at $500 each were purchased at the Vons store, for a total transaction price of $5,095.50.  The gift cards were purchased using an AmEx in the name of a female victim with initials B.C.L., with an account number ending in -61012.  I also reviewed still images from a surveillance camera positioned over the register, and at the exit of the store. Based on my knowledge of the investigation, the individual who completed the transaction appears to be VO.[5]

    **G.    Execution of a Search Warrant at the Highland Residence**

    14.    On September 11, 2015, the Honorable Douglas F. McCormick issued a search warrant for the Highland Residence, including all attached structures and storage units on the property, and any vehicles parked in the driveway.

    15.    The search warrant was executed on September 15, 2015. Based on my participation in the execution of the search warrant

---

    [5] In addition, during the search of the Highland Residence, agents observed in VO's bedroom closet what appeared to be the same hat worn in this photograph.

12

and my conversations with other law enforcement agents involved in the execution of the warrant, I learned the following:

        1.   <u>VO's Bedroom</u>

        a.   VO was found in the southwest bedroom of the Highland Residence.  VO initially identified himself to agents as Tehi Minh Vo.  Agents recovered VO's California driver's license from the bedside table.  Agents also recovered from the bedroom two photographs of VO, another piece of identification with VO's picture, and a checkbook in VO's name.  Additionally, two individuals present in the home confirmed to me that VO lives in the southwest bedroom.

        b.   Agents recovered the following items from VO's bedroom: approximately 121 AmEx credit cards and gift cards, approximately 49 pieces of AmEx mail, a Vons card, a credit card reader/writer,[6] loose and used tipping foil,[7] and a California driver's license in the name of P.C.N. (the identity theft victim whose identification was associated with the September 2, 2015 gift card transaction).  Inside of a box labeled "carding tools," agents recovered tipping foil and miscellaneous tools.

---

   [6] Based on my training and experience, I know that this device can be used to encode the magnetic strips on credit cards.

   [7] A foil tipping machine, in which the tipping foil is used, was found in the closet outside of the bedroom.  Based on my training and experience, I know that foil tipping is often used to manufacture fraudulent and counterfeit credit cards.

c.   Agents also recovered from VO's bedroom a baggie containing 1.6 grams of a crystal-like substance that was later field tested as methamphetamine.[8]

2.   Entryway and Closet Outside of VO's Bedroom

d.   In the entry way and entry way closet outside of VO's bedroom, agents discovered a foil tipping machine, card printer, and an embosser which I know, based on my training and experience, are used to create false and fraudulent credit cards and identification cards.  Five AmEx cards were also found inside the entryway closet.

3.   VO's 2001 Lexus Sedan

e.   Inside of the 2001 Lexus sedan registered to VO, agents recovered eight DMV change of address cards, and twenty California driver's licenses in names other than VO's.

4.   CHRISTOPHER HOANG DO

f.   DO was apprehended in the front yard of the Highland Residence while attempting to run from inside the Highland Residence and evade arrest.  DO initially claimed to me that his name was Andrew Nguyen, that his address was 17422 Teachers, Irvine, California, and that his date of birth was November 12, 1987.

g.   A 2012 Acura TL, California License Plate 7MGP800 (the "Acura"), was parked in the driveway of the Highland

---

[8] Agents also recovered the following controlled substances from the Highland Residence: a tin containing mixed pills and a bag of suspected methamphetamine, five pounds of suspected marijuana along with a scale and packaging, and several small baggies containing approximately 3 ounces of suspected methamphetamine.

Residence.   Inside a wallet within the Acura's glove compartment, agents found a California Driver's License in the name of Andrew Nguyen, with a photograph depicting DO.[9]   The address and date of birth matched the information DO had previously told me.

h.   Also inside the black wallet were eight AmEx credit cards (several of which were embossed with Andrew Nguyen's name as the second cardholder), and one Vons card. Agents also recovered a black backpack from the Acura which contained three AmEx credit cards and three pieces of AmEx mail.

i.   On the floor of the Acura, agents recovered an AmEx credit card that had P.C.N.'s name embossed as a second cardholder name -- nearly identical to the embossed credit card used by VO on September 2, 2015 at the Vons store.

j.   In his post-arrest interview, DO confirmed to me that his true name was CHRISTOPHER HOANG DO, not Andrew Nguyen.

k.   Based on my training and experience, and my knowledge of the investigation, I believe that DO uses the Andrew Nguyen identity for the purpose of carrying out access device fraud, similar to VO's use of the P.C.N. identity when carrying out access device fraud.   Those names are embossed directly on the AmEx cards so that the merchant is misled to believe that the individual presenting the card is an authorized cardholder.

---

[9] The vehicle's registration was in the name of Tom Nguyen.

5.   Evidence Recovered Elsewhere in the Residence

1.   In addition to the items previously described, agents also recovered from the Highland Residence and the vehicles parked in the driveway, dozens of credit cards, gift cards, mail, personal profile information, cell phones, and computer equipment.  Inside of the garage, agents discovered gaming consoles and slot machines actively in use by non-residents, which contained approximately $7,718 in cash.

H.   Training and Experience Regarding Access Device Fraud

16.  Based upon my training, experience, and conversations that I had with other Law Enforcement Officers and/or reports that I have read, I know the following:

a.   Individuals who commit crimes such as identity theft, credit card fraud, cloning of access cards, and other types of fraudulent activity engage in this type of activity on an ongoing basis, and typically use the proceeds of their crimes for financial gain and to support their lifestyle.

b.   Individuals engaged in these crimes typically use various tools to manufacture, alter, counterfeit, prepare and/or foster the forging of checks, credit cards, and identification such as computer equipment and scanners, document making equipment, embossers, and personally identifiable information of victims.

c.   Individuals involved in access device fraud, identity theft, and other related crimes often work with one or more co-conspirators, and may live in the same residence as his or her co-conspirators.  Furthermore, individuals involved in

16

these crimes typically store and maintain the tools, data, and proceeds of their criminal conduct in their residence, because the residence is perceived as a secure location, and because the perpetrators seek easy access to their equipment. Additionally, I know that individuals engaged in access device fraud and related crimes may also establish a stash house or headquarters for their criminal conduct in which records, proceeds, equipment, and other evidence of criminal activity is maintained.

      d.   With respect to perpetrators who use fraudulent access devices for retail purchases, evidence of the fraudulent activity is also typically found in the perpetrator's vehicles, including stolen or fraudulent access devices, receipts, stolen mail, and digital devices.

## V.  CONCLUSION

17.  For the foregoing reasons, I respectfully submit there is probable cause for a complaint and arrest warrants charging VO, DO, PHAM, and NGUYEN with conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2).

/s/

_____

Matthew O'Donnell, Special
Agent, United States Secret
Service

Subscribed to and sworn before me
this 16 day of September, 2015.

KAREN E. SCOTT
_____

HONORABLE KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE